NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WANDA CASTILLO, *et al.*, | : |
| Plaintiffs, | : |
| v. | : Civil No. 18-3144 (RBK/JS) |
| EXPRESS SCRIPTS, INC., *et al*, | : **OPINION** |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter having come before the Court on Plaintiffs' motion to remand the action to state court and voluntarily dismiss Count III (Doc. No. 8) and Defendants' opposition motion and cross-motion for costs and fees (Doc. No. 12). For the reasons set forth in the Opinion below, the Court hereby **GRANTS** the Plaintiffs' motion to remand the action to state court and **DENIES** Defendants' cross-motion for costs and fees.

### I. BACKGROUND

Plaintiffs Carmelo Almovodar and Wanda Castillo ("Plaintiffs") are husband and wife and former employees of Defendant Express Scripts Pharmacy, Inc. ("Express").[1] Complaint ¶¶

---

[1] Defendants note in the Notice of Removal that past filings, including the initial complaint, incorrectly name one Defendant as "Express Scripts, Inc." rather than "Express Scripts

3–4 [Doc. No. 1]. They both worked for Express for several years as warehouse associates in Florence, New Jersey. *Id.* ¶¶ 4, 6. Mr. Almovodar was employed there from October 2006 to March 21, 2017. *Id.* ¶ 7. Ms. Castillo was employed there from September 2007 to January 22, 2017. *Id.* ¶ 6. During the relevant period, Defendant Matthew Dooling (collectively with Express "Defendants") served as Castillo's direct supervisor. *Id.* ¶ 8.

Ms. Castillo is disabled with diverticulitis and lumbar spondylosis. *Id.* ¶ 11. In 2015, Castillo missed work on several occasions because of hospitalization related to diverticulitis flare-ups. *Id.* ¶ 12. On January 7, 2016, she took a leave of absence, with approval, to undergo surgery related to her condition. *Id.* ¶ 12. This leave of absence ran for approximately seven weeks until February 28, 2016. *Id.*

Castillo's medical complications continued after this surgery. *Id.* ¶ 15. In June 2016, she applied for, and was approved of, a twenty-day medical leave of absence under the Family Medical Leave Act ("FMLA"). *Id.* ¶ 16. Her complications continued in July 2016, when she was again hospitalized due to her diverticulitis. *Id.* ¶ 17. Upon release, she requested intermittent leave for two days, which Defendants subsequently denied. *Id.* ¶ 19.

On September 20, 2016, Castillo underwent a second surgery, and upon her return to work the next day, she provided a doctor's note to Dooling, that advised that she was prohibited from lifting for two days. *Id.* ¶ 20. Castillo alleges that Dooling denied her request for a brief and reasonable accommodation and sent her home. *Id.* ¶ 22. Castillo consulted with her doctor,

---

Pharmacy, Inc." [Doc. No. 1]. We note this correction but keep the docket heading consistent with the past filings and instant motion before the Court.

who placed her on a medical leave of absence through October 3, 2016. Again, Defendants denied her request for a medical leave of absence. *Id*. ¶ 24.

Castillo was hospitalized again on October 25, 2016 and cleared to return to work on October 28. *Id*. ¶ 25. According to Castillo, Defendants disciplined her for these absences in November 2016. *Id*. ¶ 26, 33. Sometime thereafter, between November 20, 2016 and January 19, 2017, Castillo missed an additional five days of work due to non-disability related illnesses. *Id*. ¶ 27. Again, she alleges that she provided Defendants with a doctor's note, but they disciplined her for a third time due to absenteeism. *Id*. ¶ 28. Finally, on January 22, 2017, Defendant Dooling observed that Castillo reported to work four hours late, noted her eight unexcused attendance points, and fired her. *Id*. ¶ 29.

Castillo subsequently retained an attorney who sent a letter to Defendants stating that they were in violation of the New Jersey Law Against Discrimination ("NJLAD"). Plaintiffs' Brief in Support of Plaintiffs' Motion for Voluntary Dismissal ("Plaintiffs' Brief") [Doc. No. 8-1], at 5. On March 21, 2017, Defendants terminated Castillo's husband, Carmelo Almovodar, for similarly accumulating too many unexcused attendance points. *Id.* at 5.

Plaintiffs originally filed in the Superior Court of New Jersey, Law Division, on December 28, 2017. No. BUR-L-2801-17 [Doc. No. 1]. The complaint consisted of six counts, alleging various violations under the NJLAD, a common-law claim of wrongful discharge under *Pierce v. Ortho Pharmaceuticals Corp.*, 84 N.J. 58 (1980), wrongful termination, and retaliation. *Id.* Defendants Express and Dooling filed a Notice of Removal on March 5, 2018 based on federal question jurisdiction pursuant to 28 U.S. 1331. Notice of Removal [Doc. No. 1]. Defendants based federal jurisdiction solely on Count III of Plaintiffs' Complaint. *Id.* This Count is a *Pierce* claim described as "Retaliation for Filing a Workers' Compensation Claim."

*Id*. Plaintiffs subsequently motioned to voluntarily dismiss the *Pierce* claim pursuant to Federal Rule 41(a)(2) and remand the case back to state court without a federal claim. *Id.*

This motion focuses on the issue of jurisdiction. *See* Plaintiffs' Brief. Defendants argue that Count III ("*Pierce* claim") requires an interpretation of the Collective Bargaining Agreement ("CBA") between Defendant Express and Plaintiffs' union and, therefore, is completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"). Defendants Opposition Motion ("Opposition Brief") [Doc. No. 11].[2] Meanwhile, Castillo argues that Count III does not involve or require any interpretation of the CBA. Plaintiffs' Brief at 3.

## II.     LAW

### A. Removal Standard

A defendant may remove an action filed in state court to a federal court that has original jurisdiction over the action. 28 U.S.C. § 1441(a). Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court for, among other things, lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c). To defeat a plaintiff's motion to remand for lack of subject-matter jurisdiction, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1995) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Generally, where the

---

[2] The relevant parts of the CBA are Article VI, Article XXI, and Rider B. Defendants Brief at 4. Article VI states, "No employee shall be disciplined or discharged except for just cause." Article XXI governs "Sick Leave." Rider "B" to the CBA governs "Absence and Lateness Control Policy and Procedures." *Id.*

decision to remand is a close one, district courts are encouraged to favor remand. *See Abels*, 770 F.2d at 29 ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand.").

### B. Jurisdiction

Pursuant to the "well-pleaded complaint" rule, a plaintiff is ordinarily entitled to remain in state court so long as the complaint does not allege a federal claim on its face. *See Franchise Tax Bd. of Cal. v. Contr. Laborers Vac. Tr. for S. Ca.*, 463 U.S. 1, 10 (1983). One exception to the well-pleaded complaint rule is the doctrine of complete preemption. This exception is for matters that "Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character." *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000). For example, § 301 of the Labor Management Relations Act ("Section 301" and "LMRA") completely preempts certain state causes of action. *See Franchise Tax*, 463 U.S. (1983).

### C. LMRA

Section 301 grants subject matter jurisdiction to the federal courts over "[s]uits for *violation of contracts* between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act." 29 *U.S.C.A.* § 185(a)(emphasis added). The Supreme Court explained that preemption is warranted so that a "uniform federal law" would govern the interpretation of collective bargaining agreements. *See Lingle v. Norge*

*Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988); *see also Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

Despite this broad rule, the Supreme Court has recently cautioned that LMRA does not preempt "every dispute concerning employment." *Lueck,* 471 U.S. at 211. For example, LMRA does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212. "Only state law claims 'inextricably intertwined with considerations of the terms of the labor contract' are preempted by [LMRA]." *Carrington v. RCA Global Communications, Inc.*, 762 F.Supp. 632, 640 (D.N.J. 1991) (quoting *Malia v. RCA Corp.*, 794 F.2d 909, 912 (3d Cir.1986)). The Court further explained in *Lingle* that Section 301 preempts all state law claims which *depend upon* the meaning of collective bargaining agreements. *See Lingle*, 486 U.S. at 405–06 (emphasis added).

### D. New Jersey Common Law *Pierce* Claims

The New Jersey Supreme Court held that an employee has a common law claim for wrongful discharge, "when the discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72 (1980). New Jersey has since recognized "Pierce claims" for discrimination, whistleblowing, and retaliation. As such, *Pierce* claims create a private cause of action even though relevant workers' compensation statutes authorize only an administrative remedy. New Jersey has affirmed its recognition of common law *Pierce* claims relating to redress for retaliatory firings. For example, the New Jersey Supreme Court explained in *Lally*:

> [W]e endorse the conclusion of the Appellate Division that there exists a common law cause of action for civil redress for a retaliatory firing that is specifically declared unlawful under N.J.S.A. §§ 34:15–39.1 and 39.2. The statutory declaration

> of the illegality of such a discharge underscores its wrongful and
> tortious character for which redress should be available. Such a
> cause of action is strongly founded in public policy which, in this
> case, is reflected in the statutory prohibitions themselves.

*Lally v. Copygraphics*, 85 N.J. 668, 670 (1981).

To establish a successful *Pierce* claim, a plaintiff must prove (1) she attempted to make a claim for workers' compensation benefits; and (2) she was discharged for making that claim. *See Morris v. Siemens Components*, *Inc.*, 928 F.Supp. 486, 493 (D.N.J. 1996).

### III. DISCUSSION

Defendants here contend that this Court has jurisdiction because Count III of the complaint requires an interpretation of the applicable CBA, which invokes Section 301 of the LMRA, and therefore preempts state law claims with federal law claims. This argument suggests that Castillo's *Pierce* claim is dependent upon the terms and provisions within Article VI of the CBA, which states "[n]o employee shall be disciplined or discharged except for just cause." Opposition Brief at 4. Defendants similarly point to the Article XXI and Rider B of the CBA, which govern "Sick Leave" and "Absences and Lateness Control Policy." *Id.* Meanwhile, Plaintiffs argue that preemption is not applicable because the *Pierce* claim is independent of the CBA and requires only a factual inquiry into the conduct and motivations of the parties.

#### *Whether Plaintiffs' Pierce Claim is Preempted by the LMRA*

This Court first considers the relationship between the complaint and the LMRA. In other words, we consider whether Castillo's *Pierce* claim is necessarily dependent on the Collective Bargaining Agreement ("CBA"). The Supreme Court provides useful guidance in *Lingle*. There, the Court found that an Illinois state law tort of retaliatory discharge for filing a

workers' compensation claim was *not* preempted by the LMRA. *Lingle,* 486 U.S. at 407. The Court reasoned that the elements of the tort were "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." *Id.* Accordingly, the Court found preemption unwarranted because no element required the interpretation of the collective bargaining agreement. *Id.* The Court explained, "[A]n application of state law is preempted by § 301 of the [LMRA] only if such application *requires* the interpretation of a collective-bargaining agreement." 486 U.S. at 418 (emphasis added).

Here, Castillo's *Pierce* claim does not require any interpretation of the CBA. First, the face of the complaint does not make any mention of the CBA. While the complaint alone is not dispositive, the Supreme Court seems to distinguish cases where a plaintiff's complaint directly cites to the CBA from other complaints– like the one at issue here – that expressly rely on state provisions. For example, like the complaint in *Caterpillar*, Plaintiffs' complaint here "is not substantially dependent upon interpretation of the collective-bargaining agreement" because it does not "address the relationship between the individual contracts and the collective agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394–95 (1987). Instead, Castillo's claim focuses on state laws that proscribe conduct by making such discriminatory terminations unlawful. As the Supreme Court explained in *Lueck*, "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." 471 U.S. at 212.

Defendants here mischaracterize Castillo's *Pierce* claim and its interaction with the LMRA. Specifically, they argue the claim "requires the interpretation of the applicable CBA" because the CBA has provisions regarding sick leave, discipline, and discharge. Opposition Brief at 4. In making this argument, Defendants essentially suggest that a defense predicated on

the CBA will preempt a state claim. This Court is unpersuaded by such argument. First, we turn again to *Lingle*. Just as in *Lingle* where the labor contract's reference to "discharge without just cause" did not invoke federal labor law, here, the pertinent contract's mention of disciplinary procedures, sick leave, absence, and just cause does not implicate the LMRA. Various courts have also rejected CBA defense arguments in related cases with state law remedies.[3] Second, the Defendants argument ignores the fact that the *Pierce* claim is a factual inquiry. Castillo only needs to show that she (1) attempted to make a claim for workers' compensation benefits; and (2) was discharged for making that claim. See *Morris*, 928 F.Supp. at 493. Couching this inquiry in term of seemingly similar facts within the CBA is not relevant. *See Lingle*, 486 U.S. at 400 (noting "S]uch parallelism" is irrelevant to preemption). *See also Livadas*, 512 U.S. at 124 ("the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.") In *Dickerson*, a court in our District explained,

> The simple fact is Plaintiff is not attempting to show that the discipline imposed violated the CBA. Rather, Plaintiff claims she was terminated in violation of state law. Hence, her claim is not

---

[3] *See Puglia v. Elk Pipeline, Inc.*, 226 N.J. 258, 279 (2016) ("A more recent Supreme Court decision fortifies the view that such a CBA-based defense is ordinarily insufficient to preempt an independent state-law action.") (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 266 (1994)). *See also Jones v. Roadway Express, Inc.*, 936 F.2d 789, 792 (5th Cir. 1991) (court need only determine the factual question of whether employer's discharge of employee was motivated by the filing of a workers' compensation claim or an alternative motive; whether motive is justified by the collective bargaining agreement is irrelevant if retaliation was not a motive); *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419, 1427 (10th Cir. 1993).

> intertwined with and does not require the interpretation of the CBA.

*Dickerson v. Palisades Medical Center*, No. 13-3382, 2013 WL 5603927 at *3 (D.N.J. 2013). *See also Sealy v. Verizon Communications, Inc*. 2014 WL 7331950 at *3 (D.N.J. 2014) (noting analogously that the NJLAD creates a "right to be free from discrimination in the workplace that exists independently of the CBA"). If this Court accepts Defendants defense-focused argument, then "all discrimination actions brought by unionized employees would be preempted because the starting point for every case would have to be the [collective-bargaining] agreement." *Coefield v. Jersey Cent. Power & Light Co.*, 532 F. Supp. 2d 685, 697 n.8 (D.N.J. 2007).

Our reasoning is further guided by this District's treatment of related state law claims concerning discrimination and wrongful termination. Specifically, NJLAD claims for wrongful termination have consistently been viewed as independent from the terms of labor contracts. *See e.g., Kube v. New Penn Motor Express, Inc.*, 865 F.Supp. 221, 228–30 (D.N.J.1994) (holding that LMRA did not preempt a NJLAD disability discrimination claim); *Carrington,* 762 F.Supp. at 639–42 (holding that the LMRA did not preempt NJLAD racial discrimination claims). Given this line of NJLAD cases, we find no reason to distinguish Plaintiff's *Pierce* claim from the aforementioned state law claims. We therefore find that Count III is not preempted by Section 301 of the LMRA.[4]

### *Whether the Defendants are entitled to fees*

---

[4] Because Castillo's claim is not preempted by Count III, we do not reach the question regarding Plaintiffs' motion to vacate Count III.

In opposing the motion to remand, Defendants requests counsel fees and costs pursuant to 28 U.S.C. § 1447. Courts have discretion to award attorney's fees when "the moving party lacked an objectively reasonable basis for seeking removal." 1447(c).

Here, Defendants' request for fees is improper for two reasons. First, Defendants sought removal, and 1447 awards fees to the nonmoving party, here Plaintiffs, when the "*removing party lacked an objectively reasonable basis*" for such removal. *Id.* (emphasis added). Second, Defendants' motion for fees is predicated on this Court permitting Plaintiffs to voluntarily dismiss Count III. As explained, we need not consider that request because we determined, as a matter of law, that no federal question existed on the face of the complaint. We therefore deny Defendants' motion for fees.

**CONCLUSION**

Because the LMRA does not preempt Plaintiffs' complaint, the Court lacks subject matter jurisdiction. Accordingly, the Court **GRANTS** Plaintiffs' motion and remands this case to state court.

Dated:   10/12/2018                                              s/ Robert B. Kugler
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge